United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2011

Lyle W. Cayce
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 09-50988
Summary Calendar

---

D.C. Docket No. 7:02-CR-96-1

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

JAIME ORTEGA-URQUIDI, also known as Jaime Urquidi-Ortega,

    Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, Midland Odessa

Before BARKSDALE, DENNIS, and OWEN, Circuit Judges.

## JUDGMENT

    This cause was considered on the record on appeal and the briefs on file.

    It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE: 2 6 APR 2011

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
        Deputy  2 6 APR 2011

New Orleans, Louisiana

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2011

Lyle W. Cayce
Clerk

No. 09-50988
Summary Calendar

UNITED STATES OF AMERICA,

          Plaintiff - Appellee

v.

JAIME ORTEGA-URQUIDI, also known as Jaime Urquidi-Ortega,

          Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:02-CR-96-1

---

Before BARKSDALE, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

    Jaime Ortega-Urquidi, permitted by this court to proceed *pro se*, appeals his jury-trial conviction, and subsequent sentence, for aiding and abetting the possession of, with intent to distribute, five or more kilograms of cocaine, and aiding and abetting the distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. He was sentenced to 220 months' imprisonment on each count, to be served concurrently.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Ortega contends: (1) the Government failed to produce sufficient evidence in support of his convictions; (2) the district court violated his due-process rights by denying his motion to suppress any in-court identification of him by Baeza Quinonez; (3) the Government engaged in misconduct by knowingly presenting false evidence; (4) the court committed reversible error when it declined to grant jury requests for a transcript of Ramirez' testimony and Ortega's telephone number provided in Ramirez' testimony; (5) the court erred in applying an obstruction-of-justice enhancement; and (6) it erred in finding Ortega exercised a leadership role, resulting in a two-level increase to his base offense level.

Because Ortega preserved his insufficiency-of-evidence claim, it is reviewed *de novo*. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008). For aiding and abetting, the Government must prove "that the . . . elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture succeed". *United States v. Jimenez*, 509 F.3d 682, 689 (5th Cir. 2007). "The underlying offense of possession with intent to distribute requires the Government to prove that the defendant '(1) knowingly (2) possessed cocaine (3) with intent to distribute it.'" *Percel*, 553 F.3d at 911 (quoting *United States v. Medina*, 161 F.3d 867, 873 (5th Cir. 1998)). As for the underlying distribution-of-cocaine offense, "the Government must prove that the defendant (1) knowingly (2) distributed (3) the controlled substance". *United States v. Sotelo*, 97 F.3d 782, 789 (5th Cir. 1996).

The evidence at trial showed that, in September 2002, Ortega arranged to deliver six kilograms of cocaine to Quinonez, who would hold the cocaine for Ortega and deliver it upon his instruction. Financial arrangements were made only through Ortega. In return for Quinonez' participation, Ortega would pay Quinonez with cash or a portion of the drugs.

Ramirez, working as a cooperating informant with local and federal law enforcement officers, contacted Ortega to purchase marijuana. Ortega offered

2

cocaine instead and the two made arrangements for Ramirez to obtain one kilogram of cocaine on credit from Ortega on 9 September 2002, to be delivered by Quinonez. Officers monitored the controlled buy; and, after Quinonez provided the cocaine to Ramirez, officers arrested Quinonez. Ramirez gave the cocaine to officers, and officers accompanied Quinonez to his home and his business, where they seized the other five kilograms of cocaine.

Approximately two days after the controlled buy, Ramirez spoke with Ortega and informed him, untruthfully, that he had been arrested and, truthfully, that Quinonez had been arrested and the cocaine seized. A little over a week after the controlled buy, Ortega was indicted. Ortega, however, remained a fugitive until 9 January 2009, when he attempted to enter the United States under an assumed name using false identification documents. On a standard check, officers determined Ortega's fingerprints matched those on his 2002 warrant. A fingerprint examiner confirmed the match and officers arrested Ortega, almost seven years after the warrant issued.

This evidence is sufficient to show Ortega: had ownership and control over both the cocaine sold in the controlled buy and the cocaine seized from Quinonez' home and business, *see, e.g.*, *United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996); and, based on the large quantities of drugs involved, intended to sell or distribute it. *United States v. Guanespen-Portillo*, 514 F.3d 393, 396-97 (5th Cir. 2008); *United States v. Mather*, 465 F.2d 1035, 1037-38 (5th Cir. 1972). Further, the evidence demonstrated that Ortega sought, through his supervision and participation, to further the drug-distribution venture. Viewing the evidence in the requisite light most favorable to the verdict, the Government produced sufficient evidence for a reasonable juror to find the elements of each offense were established beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Percel*, 553 F.3d at 910.

Ortega maintains the district court violated his due-process rights by denying his motion to suppress any in-court identification of him by Quinonez.

3

The district court's related factual findings are reviewed for clear error; its conclusions of law, *de novo*. *United States v. Moody*, 564 F.3d 754, 762 (5th Cir.), *cert. denied* 129 S. Ct. 2756 (2009).

To determine the admissibility of identification evidence, a two-step inquiry is applied: (1) whether the identification was impermissibly suggestive; and (2) whether the procedure posed a very substantial likelihood of irreparable misidentification. *United State v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997). As to the latter inquiry, the facts considered are: (1) the opportunity of the witness to observe the criminal at the crime scene; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the witness' level of certainty; and (5) the time between the crime and the identification. *Id.*

In applying these factors, the court did not err in finding Quinonez' identification of Ortega was reliable. *See Moody*, 564 F.3d at 763. The evidence showed that, while Quinonez was in prison, a drug task force officer presented him with two photographs of Ortega and Quinonez identified Ortega to the officer. Quinonez testified at the suppression hearing and trial that he had "always known" Ortega because they grew up in the same area of Mexico and had worked together in cocaine-trafficking ventures since approximately 1996. This relationship provided him both the opportunity and incentive to observe and be familiar with Ortega's appearance. *See id.* Given the illegal nature of their work, Quinonez had every reason to be particular in his observations of Ortega's appearance. *See id.* Although seven years passed between the date of the offense and Quinonez' identification, he had worked with Ortega during that time.

In addition, Ortega asserts that the Government engaged in misconduct by: presenting evidence to show he was the individual discussing drug transactions in sound recordings made by law enforcement officers; and presenting the testimony of Ramirez and Quinonez. For a new trial based on misconduct, Ortega must show: (1) the witness' testimony was false; (2) the

4

Government knew it was false; and (3) the testimony was material. *See United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997). Ortega's unsupported assertions are insufficient to show Quinonez' and Ramirez' testimony, as well as that of officers identifying Ortega's voice and experts identifying his fingerprints, were false. *See id.* at 893-94.

Further, the court did not err in denying the jury's request for: a transcript of Ramirez' testimony regarding the controlled-drug buy; and Ramriez' testimony regarding Ortega's telephone number. *See United States v. Schmitt*, 748 F.2d 249, 256 (5th Cir. 1984). Because Ortega did not object in district court, this issue is reviewed only for plain error. *United States v. Daniels*, 281 F.3d 168, 184 (5th Cir. 2002). Under plain-error review, defendant must show, *inter alia*, a clear or obvious error affecting his substantial rights. *United States v. Infante*, 404 F.3d 376, 388 (5th Cir. 2005). Ortega's assertion that the jury wanted the transcript and phone number because it questioned Ramirez' credibility is purely speculative. Accordingly, there was no clear or obvious error in the district court's determination that, in the absence of the jury's providing a reason for the request, the testimony regarding the controlled-drug buy and phone number would unduly emphasize that testimony and delay the proceedings. *See United States v. Krout*, 66 F.3d 1420, 1433 (5th Cir. 1995). Nor does it support Ortega's further speculation that the lack of the transcript and phone number resulted in a guilty verdict.

Moreover, Ortega contends the court erred in applying the obstruction-of-justice enhancement when calculating his advisory sentencing range. This fact-finding is reviewed for clear error. *See United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). The record reflects that Ortega fled to Mexico after Ramirez informed him he and Quinonez had been arrested and the cocaine had been seized. Ortega remained in Mexico for almost seven years before attempting to return to the United States under a false name. Ortega's flight and subsequent presentation of false identification documents upon attempting

5

reentry was obstructive and not an ordinary case of avoidance of arrest; therefore, the enhancement was not clearly erroneous. *See id.* at 208-09; U.S.S.G. § 3C1.1, cmt. n.5(d).

Similarly, the court did not clearly err in applying the leadership-role enhancement pursuant to Guideline § 3B1.1(c). *See United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006). The evidence reflected that Ortega exercised a leadership role: he had been a source of drugs for both Ramirez and Quinonez; he arranged for the delivery to, and distribution from, Quinonez of six kilograms of cocaine; he arranged for the sale and delivery to Ramirez of one kilogram of cocaine; and he had previously recruited Ramirez to smuggle marijuana into the United States.

AFFIRMED.